YATES, Judge.
On or about April 2, 1996, Fordie William Hiatt sustained an injury while working in the line and scope of his employment with Standard Furniture Manufacturing Company, Inc.
On August 26, 1996, Hiatt filed a two-count complaint, alleging that Standard Furniture had fired him in retaliation for his claim for workers’ compensation benefits and that Standard Furniture had committed fraudulent misrepresentation. Standard Furniture answered, denying the material allegations of the complaint, contending that Hiatt’s claim of fraud was barred by the exclusivity provision of the workers’ compensation statute, and it moved for a more definite statement regarding the fraud claim. Thereafter, Hiatt filed an amended complaint, detailing the basis for his claim of fraudulent misrepresentation.
Standard Furniture moved for a summary judgment, also filing a narrative of undisputed facts, a brief in support of its motion, and supporting documentation. Hiatt filed a response in opposition to the motion, along with supporting documentation.
*409 After a hearing, the trial court entered a summary judgment in favor of Standard Furniture on both the retaliatory discharge claim and the fraudulent misrepresentation claim. Hiatt appeals, contending that the court committed reversible error. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala.Code 1975. .
A motion for a summary judgment is to be granted if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Hinkle v. Burgreen Contracting Co., 678 So.2d 797 (Ala.Civ.App.1996); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Our review of the record reveals the following pertinent facts: On or about April 2, 1996, Hiatt, who was a truck driver for Standard Furniture, sustained an injury to his right shoulder while unloading his truck in Massachusetts. Upon his return to the employer’s factory in Alabama, Standard Furniture referred Hiatt to Dr. J. Michael Cockrell for medical treatment.
Initially, Hiatt was unable to work at all, but after a period of treatment, Dr. Cock-rell allowed Hiatt to return to work on light-duty status. Standard Furniture sent Hiatt to Ohio with a “no-touch” load; however, during this trip Hiatt either rein-jured himself or suffered a flare-up of his prior injury. In any event, Dr. Cockrell, once again, restricted Hiatt from work.
In his deposition, Hiatt testified to the following: On Monday, July 15, 1996, he asked Dr. Cockrell to allow him to return to work on light-duty status; Dr. Cockrell complied with his request, releasing him to return to work on light-duty status, with certain restrictions — no overhead work and no lifting over 30 pounds. That same day, Hiatt went to the factory and talked with Laurie Wiggins, the dispatcher, about the availability of “no-touch” loads. Wiggins told him that there were not any “no-touch” loads available at that time, but that she would find something by the end of the week and contact him. After talking with Wiggins, Hiatt went home and waited for Wiggins to contact him.
Gary Harbin, Standard Furniture’s risk manager, and Penny Bailey, the company nurse, testified in their depositions that the following occurs when an employee who has been unable to work because of an on-the-job injury is released to return to work on light-duty status: (1) The employer sends the employee a letter advising the employee of the availability of a job and the date by which the employee is to report to work; (2) If the employee fails to report to work within the time established, the employee is suspended for five days and a new date for reporting to work is established; and (3) If the employee does not report to work after the five-day suspension, the employee is terminated.
Standard Furniture mailed to Hiatt a certified letter, dated July 16, 1996, which stated:
“This is to verify that you have been released to limited duty by Dr. J. Michael Cockrell. You were released to return to work as of July 16, 1996. Standard Furniture has a job available for you within your restrictions.
“This letter serves as notice that you should report to work when released by your authorized worker’s compensation physician. If you fail to report to work by Friday, July 19, 1996,- you will be *410 subject to disciplinary action under our company work rules.”
Hiatt testified that he received this letter on July 19, 1996, and that he decided he would not call Standard Furniture that day, but would go to the factory on Monday, July 22, 1996, to “straighten everything out.” He stated that when he received the July 19, 1996, letter, he “didn’t even understand that they was going to put me inside the plant. I didn’t know what was going on really, to be honest with you.”
Hiatt also testified that on July 22, 1996, he received from Standard Furniture another certified letter, dated July 19, 1996, which stated:
“Standard Furniture has had a job available for you within your work restrictions and you have failed to report to work and fulfill your job duties. Because you have failed to report to work and fulfill your job duties, we have no choice but to suspend you for five (5) days as of 07/22/96. Your job will still be available for you on 07/29/96. Failure to report to work on July 29, 1996, will be subject to termination.”
On July 25, 1996, Hiatt spoke with a representative “down at state workmen’s comp” who suggested that Hiatt go talk with his employer. That same day, Hiatt went to see Harbin and said, “I think we need to talk.” Hiatt testified that Harbin replied, “Well, I ain’t got nothing to say to you, Bill.... [Y]ou [have] been terminated.”
Hiatt, on July 27, 1996, received from Harbin a certified letter, dated July 24, 1996, stating: “Under the ‘COBRA’ act of 1986, you are eligible, as a terminated employee of [Standard Furniture], for eighteen (18) months of extended coverage of your Blue Cross insurance.”
Standard Furniture sent to Hiatt a certified letter, dated July 30, 1996, which stated:
“Recently Standard Furniture sent you a letter requesting that you return to work with restrictions given to you by your physician. A job was available for you and you did not report to work and satisfactorily fulfill your job duties. At that time you were suspended for 5 days.
“To this date you have not returned to work. We now have no other choice than to terminate your employment with our. company.”
Wiggins testified to the following in her deposition: Before July 15, 1996, Wiggins had spoken with Harbin concerning her reservations about sending Hiatt back on the road in light of the results of his previous attempt to return to work as a truck driver while on light-duty status. On July 15 and 16, 1996, Wiggins did not have any “no-touch” loads available and she told Hiatt that she would “see what she could do.” Although other employees had been injured while working in Standard Furniture’s transportation department, Hiatt was the first person who had attempted to return to work in the transportation department while on light-duty status. When employees from the transportation department returned to work on light-duty status, they customarily worked in the factory until they were released to work with no light-duty restrictions. “No-touch” loads were not readily available because Standard Furniture had only one destination that involved a “no-touch” load. Wiggins had concerns about whether some of the “no-touch” loads fell within the restrictions imposed by Dr. Cockrell. Sometime during the week of July 15-19, 1996, Hiatt called Wiggins and told her that if she did not have anything for him to do then the company wanted him to work light-duty in the factory. During this telephone conversation, Hiatt told Wiggins that he would quit before he worked in the factory and Wiggins told him that there was nothing that she could do. After Wiggins arrived at work on July 22, 1996, Bob Guy, “one of [Standard Furniture’s] Ryder shop people,” telephoned Wiggins to tell her that Hiatt had come in on Saturday, *411 July 20, 1996, and had cleaned out his truck and turned in his keys to Guy.
Bailey, in her deposition, stated the following: In June 1996 she had had some conversations with Hiatt concerning the fact that his group health insurance premiums were in arrears because he was unable to work and, thus, was unable to pay his portion of the premiums. Hiatt was never able to pay his portion of the premiums and eventually his group health coverage was canceled. On July 15, 1996, Standard Furniture learned that Hiatt had been released to return to work on light-duty status with certain restrictions. Harbin had told Bailey to contact Jim Jackson, the supervisor over the assembly area, to see if there was a position available for Hiatt in the factory that fell within the restrictions imposed by Dr. Cockrell. Jackson did have a job available. On July 16, 1996, Bailey contacted Hiatt by telephone and told him to come in that day because a job was available in the factory that was within the restrictions imposed by Dr. Cockrell. Hiatt told Bailey that Wiggins had told him that she had a job for him. Hiatt also told Bailey that he did not want to work in the factory and that he would come down and clean out his truck. When Bailey relayed to Harbin Hiatt’s response, Harbin told Bailey to send Hiatt a letter advising him to report to work.
Harbin, in his deposition, stated the following: The July 24, 1996, letter was “a COBRA letter,” which was “a form letter that [his] assistant keeps in her file and that [the employer] issue[s] any time a Blue Cross/Blue Shield group health insurance coverage is terminated.” As of July 24, 1996, Harbin was not a “terminated employee.” However, Harbin was not aware that anyone had advised Hiatt subsequent to the July 24, 1996, letter that he was not a “terminated employee.”
We note that § 25-5-11.1, Ala.Code 1975, states, in pertinent part:
“No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers’ compensation benefits under this chapter.”
(Emphasis added.)
Our supreme court stated the following in Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369 (Ala.1988):
‘We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was ‘terminated’ because he sought to recover worker’s compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the plaintiff must prove that the reason was not true but a pretext for an otherwise impermissible termination.”
Here, the employee contends that his employment was terminated because he had sought to recover workers’ compensation benefits. The employer contends that it terminated the employee’s employment because, it said, the employee failed to return to work by the scheduled reporting date. After reviewing the evidence, we conclude that Hiatt failed to prove that the reason given by Standard Furniture was not true, but was merely a pretext, or that his employment was terminated solely because he sought to recover workers’ compensation benefits. Consequently, the portion of the trial court’s judgment as to that issue is affirmed.
Hiatt also contends that Standard Furniture was guilty of fraudulent misrepresentation and that the trial court committed reversible error when it entered a summary judgment on that claim. Hiatt relies upon the following facts and contentions: The July 19, 1996, letter stated, ‘Tour job will still be available for you on 07/29/96.” However, the July 24, 1996, letter referred to Hiatt as a “terminated employee” and on July 25, 1996, Harbin told Hiatt, “[Y]ou [have] been terminated.” Hiatt failed to report to work on July 29, *412 1996, because he relied upon the employer’s representations that he was a “terminated employee,” and was thereby damaged.
Standard Furniture contends that Hiatt’s claim of fraud was barred by the exclusivity provision of the workers’ compensation statute. See § 25-5-52, Ala. Code 1975. However, claims alleging intentional tortious conduct are not barred by the exclusivity provision. See Lowman v. Piedmont Executive Shirt Mfg. Co., 547 So.2d 90 (Ala.1989); Upchurch v. Universal Underwriters Ins. Co., 610 So.2d 1163 (Ala.Civ.App.1992).
Our supreme court, in Lowman, supra, 547 So.2d at 95, stated:
“In order to insure against borderline or frivolous claims, we believe, in view of the exclusivity clause, that a plaintiff, in order to go to the jury on a claim, must make a stronger showing than that required by the ‘substantial evidence rule’ as it applies to the establishment of jury issues in regard to tort claims generally. Therefore, we hold that in regard to a fraud claim against an employer, a fellow employee, or an employer’s insurer, in order to present a claim to the jury, the plaintiff must present evidence that, if accepted and believed by the jury, would qualify as clear and convincing proof of fraud.”
(Citations omitted.)
This court, in Upchurch, supra, 610 So.2d at 1166, stated:
“In order to recover for fraudulent misrepresentation, a plaintiff must prove that the defendant made a false representation regarding a material existing fact; that the defendant knew the representation was false (or made the representation without regard to its truth or falsity) and intended to deceive the plaintiff; that the plaintiff was, in fact, deceived by the representation and justifiably relied upon it; and that the plaintiff was damaged as a result of the reb-anee.”
The question is whether Hiatt presented clear and convincing proof of the alleged fraudulent misrepresentation on the part’ of Standard Furniture. Hiatt presented evidence that Standard Furniture did not consider him to be a “terminated employee” when it mailed him the July 24, 1996, COBRA letter and that he had rebed upon the representations made in the COBRA letter and, in reliance, failed to report to work on July 29, 1996. Consequently, that portion of the trial court’s judgment dealing with the fraud claim is reversed and the case is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, J„ concur.
CRAWLEY and THOMPSON, JJ, concur in part and dissent in part.