On Application for Rehearing.
This court's June 30, 2000, order of affirmance without opinion, issued pursuant to Rule 53, Ala.R.App.P., is withdrawn, and the following is substituted therefor.
Linda Suttles (the "worker") sued Syncro Corporation (the "company"), alleging that it had fired her in retaliation for filing a workers' compensation claim. See Ala. Code 1975, § 25-5-11.1.[1] The company argued that it had fired the worker because she had violated the company's absence policy by missing two consecutive work days without reporting or explaining her absence. The worker argued that the stated reason was a pretext.
The case proceeded to trial. The company made a motion for judgment as a matter of law ("JML") at the close of the worker's evidence and again at the close of all the evidence; the trial court denied both motions. The jury returned a verdict for the worker, awarding her compensatory damages of $10,000 and punitive damages of $75,000; the trial court entered a judgment on that verdict. The company filed a postverdict motion for a JML, a new trial, or a remittitur. The trial court denied this motion. The company appealed to the Alabama Supreme Court, which transferred the case to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
The company argues that the trial court erred by not granting its preverdict motion for a JML and its postverdict motion for a JML. The standard applicable to our review of the trial court's ruling on the company's motions for JML is the same as the standard used by the trial court in granting or denying the motions; that is, viewing the evidence in the light most favorable to the nonmovant, "`we determine whether there was sufficient evidence to produce a conflict warranting jury consideration.'" See Glenlakes Realty Co. v. Norwood, 721 So.2d 174, 177
(Ala. 1998) (quoting Bussey v. John Deere Co., 531 So.2d 860, 863 (Ala. 1988)). The company argues that the worker's evidence failed to rebut its evidence indicating that it had a legitimate reason for firing her.
 "In Twilley v. Daubert Coated Products, Inc., 536 So.2d 1364, 1369 (Ala. 1988), our Supreme Court interpreted [§ 25-5-11.1] as follows:
 "`We hold that an employee may establish a prima facie case of retaliatory discharge by proving that he was "terminated" because he sought to recover workers' compensation benefits, which would be an impermissible reason. The burden would then shift to the defendant employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the [employee] must prove that the reason [given by the employer] was not true but was a pretext for an otherwise impermissible termination.'"
 "Moreover, after the [employer] has met his burden of coming forward with evidence of a legitimate reason, `"`[t]he [employee] then has the burden of going forward with rebuttal evidence showing *Page 875 
that the [employer's] reasons'"' for terminating the [employee's] employment were untrue. Twilley, [536 So.2d] at 1369 (citation omitted)."
Beaulieu of America, Inc. v. Dunn, 658 So.2d 454 (Ala.Civ.App. 1994).
The evidence in the record, viewed in the light most favorable to the worker, suggests the following: On August 15, 1996, while working for the company, the worker injured her back while operating a wire-winding machine. The company sent the worker to see Dr. John Crider. On August 19, Dr. Crider wrote the worker an excuse, taking her off work indefinitely. Dr. Crider referred the worker to Dr. Robert L. Hash II, a neurosurgeon. When the worker saw Dr. Hash on August 26, he too wrote her an excuse, advising the company that she would be off work until September 9. Dr. Hash later extended the excuse to September 12.
The worker saw Dr. Hash again on September 13, still complaining of back and leg pain. Dr. Hash wrote another excuse, stating that the worker could return to work on October 7. Dr. Hash extended this excuse to October 21. On October 21, the worker had a myelogram; Dr. Hash excused the worker from work until October 24. After receiving the results of the myelogram, Dr. Hash informed the worker that he could not assist her surgically and advised her to return to Dr. Crider for further treatment. The worker made an appointment with Dr. Crider for October 30; at that appointment he instructed her to attend physical therapy.
The worker did not contact the company on October 24 about her continued absence from work. The company had no excuse that excused the worker for any days she missed after October 24. The company attempted several times to contact the worker by telephone on October 28; the attempts were unsuccessful. The company's personnel director, Donna Collins, wrote the worker a letter, which read:
 "Per the last doctor's excuse the company received for you, you were due to return to work Thursday, October 24, 1996, without restrictions. The company expects associates to return when they are fully released without restrictions. We have not heard from you concerning returning to work. If you do not return immediately, you will be considered to have voluntarily terminated with the company. Please contact me immediately."
The letter was dated October 29, was sent certified mail, and was picked up by the worker on October 31.
The worker testified that she telephoned Collins on October 31, after she had received the letter, and reported that she continued to suffer from back pain, leg pain, and headaches. She also testified that she informed Collins that she had had an appointment with Dr. Crider the day before and that he had ordered that she attend physical therapy. She stated that Collins asked her how she was feeling, but she testified that Collins never indicated that she would be fired if she did not return to work.
Collins testified that she had not spoken with the worker. In fact, she testified that she had reported the worker's failure to respond to the October 29 letter to Kenneth Vest, the manufacturing manager; that they had discussed the situation; and that they decided to fire the worker. Vest wrote the termination letter on November 1, but Collins did not mail the letter until November 4.
When the worker received the termination letter on November 5, she contacted Collins by telephone, asking why she had been fired. Collins informed her that she had violated the absence policy and that *Page 876 
the company had no excuses for her absences after October 24. The worker contacted Dr. Hash, who then faxed an excuse excusing the worker from work until October 30, the date of her appointment with Dr. Crider. After Collins received this excuse, she did not rescind the termination, stating at trial that the worker had still had more than two unexplained absences (October 30 and 31 and November 1, 2, and 4), in violation of the absence policy.
The company's absence policy reads, in part:
 "If, for any reason you find that you cannot report for work at your regular starting time, or you know in advance that you will be absent, notify your supervisor. Explain the absence and give date and time you expect to be back on the job.
 "An associate's daily presence on the job is of such importance that the following rules have been established:
 "1. An unreported and unexplained absence from work for two consecutive work days results in the termination of employment."
The company handbook also contains a medical-leave policy, which does require that the worker have a doctor's excuse and requires a worker to return to work once released by the doctor.
The worker argues that she presented sufficient evidence of pretext because, she says, she informed Collins about her appointment with Dr. Crider, her physical therapy, and her continued symptoms on October 31, and, in spite of her reporting and explaining her absence, the company still fired her. The company argues that the worker's construction of the absence policy would allow a worker to call his supervisor and report that he needed to go grocery shopping, and that such an absence could not be counted as an unreported or unexplained absence. Certainly, as the company argues, such a construction would allow the labor force to pick and choose when to come to work. However, the absence policy requires that the absence be reported and explained; it does not specifically require that the explanation meet any particular guidelines, that it be approved by a supervisor, or that it be in writing. The construction given to the policy by the worker, however unpalatable to the company, is a literal interpretation that is supported by the loose language used in the handbook. Even applying a reasonableness standard, as urged by the company, we conclude that the worker's testimony that she continued to suffer the effects of her work-related accident and that she was undergoing further treatment would be sufficient to meet such a test.
In addition, despite the company's arguments on application for rehearing, this court is not ignoring precedent. A company is not liable for retaliatory discharge when it terminates a worker based on the neutral application of an attendance policy. See, e.g., Smith v. DunlopTire Corp., 663 So.2d 914 (Ala. 1995); Hiatt v. Standard Furniture Mfg.Co., 741 So.2d 407 (Ala.Civ.App. 1998). However, in light of the wording of the company's absence policy and the worker's testimony that she reported and explained her absence in compliance with that policy, we think that the worker presented evidence from which the jury, which resolves such factual disputes, see Ex parte Usrey, 777 So.2d 66 (Ala. 2000) (holding that, when testimony about the reasons for a worker's termination is disputed, a retaliatory-discharge case should be submitted to the jury), was free to conclude that the worker complied with the absence policy and that the company could not have truly based its termination on her alleged violation of that policy. See Coastal LumberCo. v. Johnson, 669 So.2d 803, 809 (Ala. 1995) (quoting *Page 877 Twilley, 536 So.2d at 1369 (quoting in turn Pushkin v. Regents of theUniversity of Colorado, 658 F.2d 1372, 1387 (10th Cir. 1981))) (stating that, after the company has offered a legitimate reason, the worker "`has the burden of going forward with rebuttal evidence showing that the [company's stated] reasons' for terminating the [worker] are not true"). That is, we conclude that the worker presented sufficient evidence of pretext to entitle her to a jury determination of whether the company discharged her in violation of § 25-5-11.1.
The company also argues that the worker failed to present clear and convincing evidence of oppression, fraud, wantonness, or malice to entitle her to an award of punitive damages. We need not address that argument, because the company failed to request a judgment as a matter of law on the punitive-damages issue until after the jury had returned its verdict. See Ott v. Fox, 362 So.2d 836, 838 (Ala. 1978) (where particular issue is not raised in motion for directed verdict, that issue is waived); Barnes v. Dale, 530 So.2d 770, 776 (Ala. 1988) ("[A] motion for JNOV, based on the `insufficiency of the evidence,' is improper, if the party had not moved for a directed verdict on the sameground at the close of all the evidence") (emphasis added). The trial court did not err by denying the company's postverdict motion for a JML on the punitive-damages issue.
ORDER OF JUNE 30, 2000, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; RULE 39(k) MOTION DENIED; AFFIRMED.
Yates, Monroe, and Thompson, JJ., concur.
Robertson, P.J., concurs in the result.
[1] Section 25-5-11.1 reads: "No employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter . . . ."