Luella Walker sued DCH Regional Medical Center ("DCH") in the Fayette Circuit Court, claiming that she was entitled to workers' compensation benefits from DCH and that DCH had terminated her employment in violation of Ala. Code 1975, § 25-5-11.1. That Code section prohibits an employer from terminating an employee in retaliation for the employee's filing for workers' compensation benefits. The parties settled Walker's workers' compensation claim for $3,500; that settlement was approved by the trial court. Walker appeals from a summary judgment for DCH on her retaliatory-discharge claim.
Walker began her employment as a nursing assistant at DCH in May 1996. Approximately one month later Walker allegedly injured her back when she attempted to lift a patient. She filed a "First Report of Injury" in July 1996.
Walker received a copy of DCH's employee handbook at the time that she became employed. The employee handbook contained a progressive disciplinary procedure for excessive unexcused absences; the procedure consisted of a verbal warning, followed by a written warning, followed by a suspension, and, finally, termination of employment. The employee handbook also stated:
 "Instances of absence caused by on-the-job illness or injury, approved FMLA [Family Medical Leave Act] absences, excused absence(s) for death in the immediate family, jury duty, attendance at National Guard summer camp or weekend drill, and [Fayette Medical Center] approved meetings are not to be counted *Page 223 as instances of absence for excessive absenteeism purposes."
(Emphasis added.) In addition, DCH offered testimony that it required all absences that an employee claimed were related to an on-the-job injury to be substantiated by a doctor's excuse. The record indicates that Walker did not dispute DCH's testimony regarding its practice of requiring a doctor's excuse for absences related to on-the-job injuries and that she had supplied doctor's excuses to DCH on numerous occasions after she allegedly injured her back.
After her alleged back injury, Walker returned to work for DCH, although she was occasionally subject to lifting restrictions imposed by a doctor. It was undisputed that Walker had only three unexcused absences between July 1996 and December 1996. However, in January 1997 the number of Walker's unexcused absences increased, and DCH gave Walker a verbal warning because, it alleged, she had exceeded the number of unexcused absences permitted by DCH's unexcused-absence policy. Approximately six weeks later, DCH gave Walker a written warning for exceeding the number of unexcused absences permitted by DCH's unexcused absence policy.
The evidence indicates that Walker had two additional unexcused absences in April 1997. Based on DCH's unexcused-absence policy, she could have been suspended at that time. However, DCH did not suspend Walker's employment until she had an additional unexcused absence in July 1997. At that time, DCH suspended Walker's employment for three days.
In August 1997, Walker again allegedly violated DCH's unexcused-absence policy and was given a "final warning" by her supervisor, JoAnn Nichols. Nichols informed Walker that her employment would be terminated if she had one more unexcused absence in the next five months and that "if she [had] an absence related to [a] workman's [sic] compensation injury, she must see a physician and submit a doctor's excuse, otherwise, she would be terminated for absences."
DCH's employee records indicate that Walker claimed that many of her unexcused absences were related to her alleged back injury. However, it is undisputed that she did not provide DCH with a doctor's excuse to substantiate the reason for most of her 20 unexcused absences in 1997.[1]
It was also undisputed that Walker could walk from her work area to DCH's emergency room to obtain the required doctor's excuse if she desired to do so and that she had obtained a doctor's excuse in that manner on some occasions in the past.
In early September 1997, Walker had several absences and provided a doctor's excuse for those absences, including an absence on September 15, 1997, for which she obtained an excuse from Dr. James T. Barnett, Jr. Dr. Barnett provided Walker with an excuse that stated that Walker "[m]ay return to work lifting up to medium duty level of 50 lbs. This should meet job requirement of nursing assistance." When Walker returned to work on September 15, 1997, she and Nichols signed a statement reflecting that Walker had been instructed as to the terms of Dr. Barnett's "excuse" and that she had been instructed to obtain *Page 224 
assistance if she needed to lift more than 50 lbs.
On September 26, 1997, Walker complained of back pain while she was at work and requested that she be permitted to go home. Nichols's notes from her meeting with Walker on that date state, in pertinent part:
 "Met with [Walker]. . . . Questioned [Walker] as to what her reasons were for not being able to work her assignment the a.m. She stated, `My back is hurting.' I asked her if she need to go to the doctor. She replied, `No.' She admitted that she came to work today because she knew one more absence would result in termination due to attendance problems.
 "Discussed attendance problems and her inability to work; therefore, she was terminated. She stated, `Fine.' She then left out of the administrative office, slamming the door."
DCH terminated Walker's employment on September 26, 1997.
In June 1998, Walker filed a complaint against DCH claiming that she had suffered a permanent partial disability as a result of her alleged 1996 back injury and that her employment had been terminated in violation of Ala. Code 1975, § 25-5-11.1. DCH filed an answer denying the material allegations of Walker's complaint. As noted above, the parties settled Walker's workers' compensation claim for $3,500. The settlement agreement and the trial court's order approving the settlement agreement specifically provided that Walker's retaliatory-discharge claim would remain pending and that Walker had not released DCH from that claim.
In August 2001, DCH filed a motion for a summary judgment as to Walker's retaliatory-discharge claim. In support of its motion, DCH filed, among other things, a copy of the employee handbook that had been provided to Walker when DCH hired her, portions of Walker's attendance records and employee records, Walker's deposition, and Nichols's deposition. Walker filed a statement in opposition to DCH's summary-judgment motion. Walker supported her statement in opposition with, among other things, excerpts from her deposition, excerpts from Nichols's deposition, and an affidavit submitted by Kathy Beasley, a former nurses' aide at DCH who alleged that she had been injured on the job and that "[o]n August 26, 1997, I was fired from my job with [DCH]. It is my belief that I was fired in retaliation for my filing a workers' compensation claim."
DCH filed a motion to strike Beasley's affidavit, arguing that the affidavit was conclusory, that it raised no issue of material fact as to Walker's claim, and that it merely stated inferences based upon belief. DCH also alleged that Beasley's affidavit directly contradicted deposition testimony that Beasley had apparently given in support of her own claims against DCH.
On September 5, 2001, the trial court entered a summary judgment in favor of DCH and against Walker as to Walker's retaliatory-discharge claim. On September 25, 2001, the trial court issued a detailed opinion in which it explained the reasons it believed a summary judgment was due to be granted to DCH and in which it granted DCH's motion to strike Beasley's affidavit. Walker appealed to the Alabama Supreme Court. The case was transferred to this court, pursuant to Ala. Code 1975, §12-2-7.
Walker argues that the trial court erred in granting DCH's motion for a summary judgment because, she says, she presented substantial evidence indicating that DCH's alleged reason for terminating her employment was a pretext for a retaliatory discharge. Walker also argues that the trial *Page 225 
court erred by granting DCH's motion to strike Beasley's affidavit.
As to Walker's argument regarding the trial court's granting of DCH's motion to strike Beasley's affidavit, Walker has cited no legal authority in support of her argument. Rule 28(a)(10), Ala.R.App.P.,[2] states that the argument shall contain "the contentions of the appellant with respect to the issues presented, . . . with citations to the cases, statutes, other authorities, and parts of the record relied on." We will not address Walker's argument as to this issue because it fails to include references to supporting authority. See, e.g., Etheredge v.Etheredge, 730 So.2d 245, 248 (Ala.Civ.App. 1999).
As to Walker's argument that the trial court erred in granting DCH's motion for a summary judgment, we review de novo a trial court's decision to grant a motion for a summary judgment. The party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee v. City ofGadsden, 592 So.2d 1036, 1038 (Ala. 1992) (footnote omitted). Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). In determining whether summary judgment is proper, the court must view the evidence in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
 "Under Alabama law, an employment contract is terminable at will by either party — for a good reason, a wrong reason, or no reason at all. . . . [However, in] order to ameliorate the effect of the employment-at-will doctrine in the context of an employee discharged for filing a claim for workers' compensation benefits, the Legislature . . . enacted § 25-5-11.1, Ala. Code 1975."
Bleier v. Wellington Sears Co., 757 So.2d 1163, 1167-68 (Ala. 2000).
Section 25-5-11.1 provides, in pertinent part, that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter." As to the burden of proof for a claim under § 25-5-11.1, our Supreme Court has stated:
 "[A]n employee may establish a prima facie case of retaliatory discharge by proving that he was `terminated' because he sought to recover workers' compensation benefits, which would be an impermissible reason. The burden would then shift to the . . . employer to come forward with evidence that the employee was terminated for a legitimate reason, whereupon the [employee] must prove that the reason was not true but a pretext for an otherwise impermissible termination."
Twilley v. Daubert Coated Prods., Inc., 536 So.2d 1364, 1369 (Ala. 1988) (emphasis added).
 "[I]n the context of summary judgment, if the defendant has supported a summary *Page 226 
judgment motion with evidence of a legitimate reason for terminating the plaintiff, the plaintiff must then refute that showing with his own prima facie
case. . . . If the defendant's showing of a legitimate reason is conclusive enough to establish that `there is no genuine question as to [that] material fact and that the moving party is entitled to a judgment as a matter of law,' Rule 56(c), Ala.R.Civ.P., the plaintiff would also have to produce evidence to refute that showing."
Culbreth v. Woodham Plumbing Co., 599 So.2d 1120, 1122 (Ala. 1992) (emphasis added). We also note that "[a] company is not liable for retaliatory discharge when it terminates a worker based on the neutral application of an attendance policy." Syncro Corp. v. Suttles,814 So.2d 873, 876 (Ala.Civ.App. 2000).
The parties agree that Walker established a prima facie case of retaliatory discharge and that in response DCH presented substantial evidence of a legitimate reason for terminating Walker, i.e., the violation of DCH's unexcused absence policy. However, Walker argues that she presented substantial evidence that DCH's alleged reason for terminating her employment was a pretext because, she says, (1) DCH's employee handbook did not state that a doctor's excuse was necessary to substantiate an absence related to an on-the-job injury; (2) DCH failed to accurately record some of her excused absences; (3) DCH did not strictly follow its policy regarding absences because it was lenient with her when it could have suspended her in April 1997; (4) her supervisors harassed her because they refused to assign her to light-duty work; (5) DCH offered more than one reason for her termination, i.e., both attendance problems and inability to work; and (6) Beasley's affidavit would support an inference that DCH had engaged in a pattern and practice of retaliatory discharge.
Walker has offered multiple arguments in an effort to persuade this court that she introduced substantial evidence that DCH's alleged reason for her termination was a pretext. After carefully reviewing the record in this case, we find no merit in any of Walker's arguments.
Walker first argues that she presented substantial evidence of pretext because, she says, DCH's handbook did not require a doctor's excuse to substantiate an absence that the employee claimed was related to an on-the-job injury. Although Walker correctly describes the language in DCH's employee handbook, DCH offered undisputed evidence that it required a doctor's excuse to substantiate that an absence was related to an on-the-job injury and that Walker was aware, long before her employment was terminated, that she was required to substantiate her absences with a doctor's excuse.[3] In Syncro, supra, this court upheld a judgment in favor of an employee when the employee had strictly complied with an employee handbook. 814 So.2d at 876. However, Syncro is distinguishable from the present case. *Page 227 
In Syncro, the employee handbook stated, in pertinent part:
 "`If, for any reason you find that you cannot report for work at your regular starting time, or you know in advance that you will be absent, notify your supervisor. Explain the absence and give the date and time you expect to be back on the job.
"`. . . .
 "`1. An unreported and unexplained absence from work for two consecutive work days results in the termination of employment.'"
814 So.2d at 876. This court noted that the employee in Syncro had testified that she "reported and explained" her absence in accordance with the literal terms of the employee handbook but that the employer offered testimony that the employee had not reported and explained the absence before she was terminated. Id. This court held that, based upon the language of the employee handbook and the employee's testimony, the employee had presented substantial evidence that the employer's reason for terminating her was a pretext so as to support a judgment in her favor. Syncro, 814 So.2d at 876-77.
In this case, DCH offered undisputed evidence of the requirement that employees supply a doctor's excuse for any absence related to an on-the-job injury. DCH also offered undisputed evidence that Walker supplied doctor's excuses to substantiate some, but not all, of her absences, and that she was specifically warned approximately one month before her termination that DCH would require a doctor's excuse to substantiate any absence for medical reasons after August 1997. In light of Walker's undisputed lack of compliance with DCH's policies, the language contained in the employee handbook does not constitute substantial evidence that DCH's alleged reason for terminating Walker was merely a pretext.
Walker next argues that DCH's failure to accurately record some of her absences as excused constituted substantial evidence that DCH's stated reason for terminating her was a pretext. It was undisputed that DCH accurately recorded the vast majority of Walker's absences and that many of those absences had no relation to her alleged injury. More importantly, however, it was undisputed that DCH accurately recorded the absences for which it disciplined Walker and particularly the unexcused absence for which Walker was terminated. Based upon the foregoing, DCH's failure to accurately record some of Walker's absences as excused did not constitute substantial evidence that DCH's alleged reason for her termination was a pretext.
Walker next argues that, according to DCH's unexcused absence policy, she should have been suspended in April 1997 after she had had two unexcused absences; however, she was not suspended until she had a third unexcused absence in July 1997. Walker cites Buzbee v. Alabama WasteServices, Inc., 709 So.2d 61 (Ala.Civ.App. 1998), for the proposition that an employer's failure to follow its termination policy constitutes substantial evidence that the employer's reason for terminating an employee was a pretext for an impermissible termination. Walker's reliance on Buzbee is misplaced.
In Buzbee, the employer testified that its normal policy regarding termination consisted of a verbal warning, followed by a written warning, followed by termination. Buzbee, 709 So.2d at 63-64. The employer stated that it had provided the employee with a verbal warning, but admitted that it had never provided the employee with a written warning before it terminated him. Based upon that admission, *Page 228 
and testimony from co-employees that they had overheard the employee's supervisor discussing his plan to terminate the employee after the employee returned to work and that the co-employees had been instructed not to communicate with the employee, we held that a summary judgment for the employer was improper. Id. at 64.
Unlike the employee in Buzbee, however, it is undisputed that DCH gave Walker the benefit of each stage of DCH's progressive disciplinary procedure before she was terminated. Walker is arguing that DCH's leniency and its attempt to provide her with "a second chance" constitute substantial evidence that its reason for terminating her was a pretext. If anything, DCH's failure to strictly enforce its policy proves that DCH was not attempting to terminate Walker, but was genuinely seeking to retain her services. DCH's failure to strictly follow its disciplinary procedures did not constitute substantial evidence that its reason for terminating Walker was a pretext. As to Walker's remaining arguments, as noted above, we have thoroughly reviewed the record and cannot conclude that Walker presented substantial evidence that DCH's alleged reason for her discharge was a pretext. We also note that the trial court issued a detailed, well-written opinion summarizing the evidence and the law applicable to Walker's arguments. Based upon the foregoing, the trial court did not err in entering a summary judgment in favor of DCH as to Walker's retaliatory-discharge claim.
AFFIRMED.
Yates, P.J., and Thompson and Pittman, JJ., concur.
[1] Walker presented testimony that a few of the 20 unexcused absences were actually excused absences because she provided a doctor's excuse for them. However, there is no evidence indicating that DCH disciplined Walker based upon mislabeled absences. Instead, the undisputed evidence is that DCH did not attempt to terminate Walker as early as it could have.
[2] Rule 28 was amended effective June 1, 2002. The pertinent provisions were previously found at Rule 28(a)(5), Ala.R.App.P.
[3] The acknowledgment Walker executed when she received the employee handbook stated:
 "I understand that the purpose of this Handbook is to provide employees of [DCH] with general information regarding the policies and procedures [DCH] attempts to follow in most cases, but that neither this Handbook nor any other provision of this Handbook is an employment contract or any other type of contract."
Our Supreme Court has stated that an employee handbook containing a disclaimer such as the one in DCH's handbook is not a contract.See, e.g., Campisi v. Scoles Cadillac, Inc., 611 So.2d 296 (Ala. 1992).