This interlocutory appeal (pursuant to Rule 5, Ala.R.App.P.) presents a question of first impression, calling for an interpretation of the scope of Ala. Code 1975, § 12-16-8.1, which prevents employers from discharging employees because they serve on juries.
The specific question is whether the trial court erred in denying the defendant-employer's motion for summary judgment on the plaintiff-employee's complaint alleging wrongful termination. The employer denied that he had been wrongfully terminated and alleged that he had been terminated because of misconduct while he was serving on a jury in a case in which his employer was a defendant. Based on the reasons discussed below, we affirm the trial court's denial of the employer's motion for summary judgment. *Page 394 
 FACTS AND PROCEDURAL HISTORY
James E. Johnson was employed by Norfolk Southern Railway Company ("Norfolk Southern") from 1978 until he was terminated in October 1996. At the time of his termination he was a conductor. The facts leading up to this controversy involve Johnson's jury service in the summer of 1996, when Johnson was summoned for jury duty in the United States District Court for the Northern District of Alabama. One of the cases on the docket at the time was T.B. Gilbert v. Norfolk Southern Railway Co., CV-94-HM-1183-NW. The defendant Norfolk Southern in theGilbert case is also the defendant in the present action.
This particular litigation arose as a result of Johnson's service as a juror in the Gilbert litigation, and it specifically involves answers Johnson gave during the jurors' voir dire examination in theGilbert case. The following colloquy occurred between Johnson and the attorney for Norfolk Southern in that case:
 "Norfolk Southern's Attorney: . . . Mr. Johnson, have you ever had an on-the-job injury?
 "Johnson: Nonreportable, everybody — You bump your knees or something like that.
 "Attorney: When you say nothing reportable, nothing in your opinion serious enough to report to the company?
"Johnson: Right."
Johnson served on the jury in the Gilbert case. The jury returned a verdict against Norfolk Southern, but in January 1998, the trial judge entered a judgment as a matter of law in favor of Norfolk Southern.
Notwithstanding the answers Johnson gave on voir dire examination, he in fact had had four previous on-the-job traumatic injuries that he had reported to Norfolk Southern. In fact, Johnson had received medical treatment for three of those injuries. As to one injury, Johnson had settled a claim with Norfolk Southern's claims department for $2,500. Johnson was also a member of a plaintiff class in an action against Norfolk Southern and in that class action he received $8,000 for a hearing-loss claim. Johnson justifies the answers he gave during his voir dire examination in the Gilbert case by saying he thought Norfolk Southern's lawyers had wanted to know only about "serious" injuries. Johnson points out that when the lawyers directed questions to him they had just finished questioning everyone about only "serious" injuries.
As a result of his statements at the voir dire examination in theGilbert case, Norfolk Southern charged Johnson with conduct unbecoming an employee, pursuant to a provision in a collective-bargaining agreement between Norfolk Southern and Johnson's union. A formal investigation and hearing were conducted, and Norfolk Southern terminated Johnson's employment in October 1996.
Pursuant to the collective-bargaining agreement and the Railway Labor Act, Johnson's union filed an administrative appeal of his termination. Norfolk Southern declined that appeal. Johnson then appealed to a Public Law Board. In May 1997, the Public Law Board ordered reinstatement, without backpay for time lost. The Public Law Board's opinion stated:
 "The record substantiates that [Johnson] stated that he had not previously sustained any reportable injuries when, in fact, he had. However, we believe that permanent dismissal is excessive. [Johnson] will be reinstated without pay for time lost."
Johnson is presently working for Norfolk Southern.
Johnson later filed this present action against Norfolk Southern, under § 12-16-8.1, Ala. Code 1975, alleging retaliatory discharge. He alleged that he was fired because of his service on a jury that returned *Page 395 
a verdict against Norfolk Southern.[1] Section12-16-8.1(a) reads as follows:
 "(a) No employer in this state may discharge any employee solely because he serves on any jury empanelled under any state or federal statute; provided, however, that the employee reports for work on his next regularly scheduled hour after being dismissed from any jury."
Subsection (b) creates a cause of action for any employee discharged in violation of subsection (a).
Norfolk Southern moved for a summary judgment. The trial court denied the motion. Norfolk Southern then moved the court to "reconsider" the denial. In response, the trial court entered an order stating:
 "The plaintiff contends that Section 12-16-8.1 . . . protects him from a retaliatory discharge by his employer even if he participates in rendering a verdict adverse to his employer. The defendant contends that § 12-16-8.1 . . . only protects the employee for being absent from his job while serving as a juror. The defendant further contends that it has the right to discharge an employee for unbecoming conduct if the employee testifies or makes false statements during the course of the trial. The Court has not found, nor has it been provided, any decisions on this issue. It appears that this may be a case of first impression. Without other precedent the court is of the opinion that § 12-16-8.1 . . . provides protection for an employee for more than the mere attendance at trial as a juror as a result of a summons."
The trial court also entered the statement called for by Rule 5(a), Ala.R.App.P., so that Norfolk Southern could seek permission to appeal the interlocutory order. This Court granted Norfolk Southern's petition for permission to appeal the denial of its summary judgment motion.
 ISSUES
This appeal raises three issues:
I. Did the evidence create a genuine issue of material fact as to whether the employee was discharged "solely" for "serving" on the jury that rendered a verdict against his employer (as the employee contends) or was discharged for making false statements during voir dire examination as a prospective juror (as the employee contends)?
II. Did the Public Law Board's finding that the employee had made false statements in the voir dire examination entitle the employer to a judgment as a matter of law in the employee's action, pursuant to §12-16-8.1, alleging a retaliatory discharge?
III. Did the Public Law Board's ruling have, under the doctrine of res judicata, a preclusive effect that barred the employee's retaliatory- discharge claim brought under § 12-16-8.1?
We will address each issue in turn.
 SCOPE OF REVIEW
To prevail on its motion for summary judgment, Norfolk Southern was required to show that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law. Rule 56(c), Ala.R.Civ.P.;Bussey v. John Deere Co., 531 So.2d 860, 862
(Ala. 1988). In reviewing the trial court's ruling on a motion for summary judgment, this Court must evaluate the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.Continental Eagle Corp. v. Mokrzycki, 611 So.2d 313,317 (Ala. 1992) (citing Hanners v. Balfour Guthrie, Inc., 564 So.2d 412,413 (Ala. 1990)).
 ANALYSIS I.
As to the first issue, Norfolk Southern contends that, under the plain language of *Page 396 
Ala. Code 1975, § 12-16-8.1., it was entitled to a summary judgment. Norfolk Southern argues that this Court has consistently looked to the "plain language" of a statute in determining its effect. As a result, Norfolk Southern argues, we should interpret §12-16-8.1, Ala. Code 1975, to simply prohibit an employer from discharging an employee solely because that employee answers a summons to serve on a jury. Under Norfolk Southern's interpretation, the statute would protect only the right of an employee to serve on a jury and would not protect an employee who was alleged to be guilty of misconduct while serving on a jury. Johnson argues that to adopt Norfolk Southern's strict construction of the statute would defeat the purpose of the statute and that the statute "should be construed in a reasonable manner to protect jurors' actions which they take necessary to their jury service."
Is Johnson in the class of persons the Legislature intended to protect by adopting Ala. Code 1975, § 12-16-8.1?
This Court has held that the fundamental rule of statutory construction is to ascertain and give effect to the intent of the Legislature in enacting a statute. IMED Corp. v. Systems Engineering Assocs. Corp.,602 So.2d 344, 346 (Ala. 1992). If possible, a court should gather the legislative intent from the language of the statute itself. Advertiser Co. v. Hobbie, 474 So.2d 93 (Ala. 1985). If the statute is ambiguous or uncertain, the court may consider conditions that might arise under the provisions of the statute and examine results that would flow from giving the language in question one particular meaning rather than another. Clark v. Houston County Comm'n,507 So.2d 902, 903-04 (Ala. 1987). The legislative intent may be gleaned from the language used, the reason and necessity for the act, and the purpose sought to be obtained by its passage. TuscaloosaCounty Comm'n v. Deputy Sheriffs' Ass'n of Tuscaloosa County,589 So.2d 687, 689 (Ala. 1991) (citing Ex parteHolladay, 466 So.2d 956 (Ala. 1985)).
Section 12-16-8.1 states that an employee may not be discharged from employment "solely because he serves on any jury empaneled" (emphasis added). The meaning of the terms "solely" and "serves" in this statute is not completely clear, as evidenced by the issues raised by the parties in this case. Therefore, we must ascertain what the Legislature intended when it used those words in order to establish the scope of the statute.
In regard to a related retaliatory-discharge statute, namely §25-5-11.1, codified as part of the Workers' Compensation Act, this Court has held that the term "solely" was intended to give the statute remedial effect. See Twilley v. Daubert Coated Products, Inc.,536 So.2d 1364, 1367 (Ala. 1988). As a remedial term, it was to be construed liberally, to effect its purposes. Id.
In applying this principle to the case at hand, we conclude that in using "solely," as it used that word in § 12-16-8.1, the Legislature intended that an employee not be discharged simply because he or she answers a call for jury service. See Howard v. WolffBroadcasting Corp., 611 So.2d 307, 312 (Ala. 1992), where this Court pointed out that the Legislature adopted what is now §12-16-8.1 in response to the decision of this Court in Bender ShipRepair, Inc. v. Stevens, 379 So.2d 594 (Ala. 1980), in which this Court refused to create an exception to the "at-will" employment doctrine for employees discharged for performing jury duty.
It seems clear that the Legislature intended, in adopting this statute, to protect citizens from being discharged from their employment when they fulfilled their civic responsibility regarding jury duty. It seems obvious that the Legislature intended to prohibit an employer from discharging an employee solely because the employee was absent from work because he or she was called for jury duty. But that *Page 397 
analysis of legislative intent does not answer the question the trial judge had to answer in this present case: Whether, under the facts of this case, the statute provided Johnson a remedy.
We must also analyze the word "serves" in conjunction with the word "solely." Stated differently, did Norfolk Southern show, under the facts of this case, that Johnson was not wrongfully terminated? In answering that question, we will apply the principles of statutory construction this Court set out in John Deere Co. v. Gamble, 523 So.2d 95
(Ala. 1988), in ascertaining the Legislature's intent regarding the word "serves." There, we also held that in interpreting a statute, a court may consider conditions that might arise under the provisions of the statute and examine results that would flow from giving the language in question one particular meaning rather than another. Id. at 99-100. Further, a court will presume that the Legislature "intended a rational result, one that advances the legislative purpose [behind] the legislation, that is `workable and fair,' and that is consistent with related statutory provisions." Id. at 100 (citations omitted).
Applying these principles, we hold that to "serve" on a jury, within the meaning of that word as it is used in Ala. Code 1975, § 12-16-8.1, is to perform all the legal duties and responsibilities associated with a juror's participating in the jury process. Those duties would include reporting for jury service; answering voir dire questions truthfully; listening to, observing, and weighing the evidence presented at trial; observing the demeanor of the witnesses; participating in deliberations; and ultimately rendering a verdict. In using the word "serves," the Legislature went beyond merely protecting an employee's right to miss work in order to attend trial as a juror. Therefore, the trial court, in its order denying Norfolk Southern's motion for summary judgment on Johnson's wrongful-discharge claim, properly held that § 12-16-8.1, Ala. Code 1975, "provides protection for an employee for more than the mere attendance at trial as a juror as a result of a summons."
Norfolk Southern argues that, even assuming for the sake of argument that it discharged Johnson for his role in rendering a verdict adverse to Norfolk Southern in the Gilbert case, this is not "an illegal motive under [§ 12-16-8.1]." We cannot accept this argument as being consistent with what the Legislature intended in adopting the legislation. To accept this argument would at least jeopardize a juror's impartiality. Rendering a verdict is the ultimate duty of a legally empaneled jury. Therefore, rendering a verdict naturally falls within the concept of "serving" on a jury, and, therefore, it would be conduct protected under § 12-16-8.1.
This statute, however, in no way encompasses or protects illegal or inappropriate conduct. We cannot say that the Legislature, in enacting § 12-16-8.1, intended to protect conduct such as providing false information under oath during voir dire, receiving bribes as a juror, or assaulting another juror. To hold that it did otherwise would produce an irrational result and would be inconsistent with the remedial nature of § 12-16-8.1 and related statutory provisions.
Having determined the scope of the coverage of § 12-16-8.1, we must address the following questions: Would the evidence support a finding that Johnson's employment was terminated solely because he served on a jury (as we have explained the concept of "to serve"), or would it compel the conclusion that it was terminated, as Norfolk Southern contends, because Johnson made false statements when questioned on voir dire — a charge the Public Law Board found was substantiated. If Johnson's employment was terminated simply because he took time to serve on a jury, or merely because he participated in rendering a verdict adverse to Norfolk Southern in the Gilbert case, then the protections of § 12-16-8.1 would apply to prohibit Norfolk Southern from discharging him. On the other hand, if Johnson's *Page 398 
termination was, in fact, the result of his conduct in giving false information under oath during voir dire examination, then the protections of § 12-16-8.1 would not apply.
Based upon this determination of the scope of § 12-16-8.1 and upon the analogous case of Twilley, supra, we hold that an employee may establish a prima facie case of retaliatory discharge, in a case filed pursuant to § 12-16-8.1, by presenting substantial evidence[2] suggesting that he was discharged "solely" because he "served" on a jury. If the employee establishes a prima facie case, then the burden shifts to the employer to come forward with evidence showing that the employee was terminated for a legitimate reason. If the employer satisfies this burden, then the burden shifts back to the employee to show that the proffered reason is a pretext.
What do the facts in this case show? Johnson claimed that he was terminated because sat on a jury that returned an adverse verdict against his employer, Norfolk Southern. To substantiate this claim, Johnson pointed out that he was removed from his job just days after the Gilbert
verdict was rendered. Norfolk Southern, in response, presented evidence indicating that Johnson's termination was based on answers Johnson gave during the voir dire examination in the Gilbert case. Norfolk Southern argues that Johnson's statements were false and that the falseness of the statements was confirmed by a Public Law Board.
Johnson countered these arguments by evidence suggesting that Norfolk Southern's stated reason for terminating him was a mere pretext. Johnson pointed to three facts: 1) Norfolk Southern removed Johnson from his job before conducting an investigation into the alleged false statements made by Johnson during voir dire examination and before holding a hearing on that matter; 2) the Public Law Board found that Johnson's termination was inappropriate and ordered Norfolk Southern to reinstate Johnson; and 3) Norfolk Southern illegally denied Johnson's application for jury-duty pay. This evidence, viewed in the light most favorable to Johnson, raises a genuine issue as to why his employment was terminated.
 II.
As to the second issue, Norfolk Southern argues that, in light of the findings by the Public Law Board with regard to Johnson's statements, "no reasonable juror could conclude that [Johnson] was discharged solely for his jury service." Therefore, Norfolk Southern argues, the trial court erred by not granting its summary-judgment motion. Norfolk Southern relies on an analogous case of a United States district court,Oden v. Norfolk Southern Ry., (No. 96-P-111-S, N.D. Ala., Nov. 25, 1997) (not published in F. Supp.). Norfolk Southern points out that in Oden, United States District Judge Sam Pointer held that a summary judgment was proper where a Public Law Board made a finding that the plaintiff-employee Oden had made a false accusation against her foreman, because, he held, no reasonable jury could find that the defendant Norfolk Southern's reasons offered for Oden's termination were pretextual. He found that Oden had proffered no "credible evidence" of a discriminatory intent by Norfolk Southern. Similarly, Norfolk Southern argues in this present case that the trial court should have granted its summary-judgment motion. We disagree.
Judge Pointer's decision in Oden is distinguishable. In Oden, the Public Law Board affirmed, as appropriate, Norfolk Southern's termination of Oden. In this case, the Public Law Board held that Johnson's termination violated the *Page 399 
collective-bargaining agreement and was "excessive" and ordered him reinstated.
Next, the court in Oden held, "In light of the Public Law Board's determination that Oden was properly terminated for making false accusations against a co-worker," that no reasonable jury could find Norfolk Southern's reason was pretextual, because Oden's proffered evidence was insufficient. Oden's claim was based upon age and sex discrimination. Her proffered evidence of pretext was: 1) evidence that her foreman said to her several times, "Mirror, mirror on the wall"; she alleged that this insinuated that she was an "ugly old witch"; and 2) evidence of a variety of instances of misconduct by other Norfolk Southern employees whose actions did not result in termination. Judge Pointer explained that the supervisor's "mirror, mirror" remarks were insufficient to support allegations of sex and age discrimination. In addition, Judge Pointer held that Oden's conduct was not substantially similar to any of the "variety of instances of misconduct" by the other Norfolk Southern employees. Therefore, such evidence, by its nature, was insufficient to sustain a claim of unlawful discrimination, because it provided no "plausible basis" for a jury to find unlawful discrimination, Conversely, in this case, although the Public Law Board affirmed that Johnson had provided false statements on voir dire examination, the Board nevertheless found that Norfolk Southern's termination of Johnson's employment was an excessive response. Furthermore, the evidence proffered by Johnson in this case, when viewed in the light most favorable to Johnson, would tend to support a claim of retaliatory discharge under § 12-16-8.1.
The Public Law Board's decision, therefore, offers no conclusive determination on the question whether Norfolk Southern's reasons were pretextual. The trial court properly concluded that the Board's decision did not support Norfolk Southern's motion for summary judgment.
 III.
Finally, Norfolk Southern argues that the Public Law Board's ruling had a res judicata effect as to Johnson's claim. Specifically, it argues that this Court has held that the doctrine of res judicata applies to the decisions of an administrative body acting with quasi-judicial powers, citing State v. Brooks, 255 Ala. 689, 694, 53 So.2d 329,333-34 (1951), and that the Public Law Board in this case acted with quasi-judicial powers.
Johnson counters with the argument that several United States Supreme Court cases have held that the decisions of arbitration bodies, like the Public Law Board here, do not have preclusive effect over federal statutory claims, and that those cases are analogous to this one. See McDonald v.City of West Branch, Michigan, 466 U.S. 284 (1984) (action pursuant to 42 U.S.C. § 1984); Barrentine v. Arkansas-BestFreight System, Inc., 450 U.S. 728 (1981) (Fair Labor Standards Act); Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974) (Title 7 action); Atchison, T. S.F. Ry. v. Buell, 480 U.S. 557
(1987) (FELA action). Johnson primarily relies on a case from the United States Court of Appeals for the Seventh Circuit holding that a Public Law Board's decision under the Railway Labor Act should not be given preclusive effect under the doctrine of res judicata. See Kulavic v. Chicago I.M. Ry., 1 F.3d 507 (7th Cir. 1993).
Based upon our analysis in the preceding section, we conclude that the doctrine of res judicata, even if applicable, would not preclude Johnson from filing a claim under the provisions of § 12-16-8.1. Accordingly, the trial court properly rejected the doctrine of res judicata as a basis for Norfolk Southern's motion for summary judgment.
 CONCLUSION
The trial court's order denying the employer's summary-judgment motion is *Page 400 
affirmed. We would point out that a jury may ultimately conclude that Johnson is entitled to no damages, because he has, in fact, been reinstated.
AFFIRMED.
Hooper, C.J., and Houston, See, and Brown, JJ., concur.
Johnstone, J., concurs specially.
Lyons, J., recuses himself.
[1] Johnson also filed with the Equal Employment Opportunity Commission a charge of racial discrimination.
[2] See § 12-21-12, Ala. Code 1975; Bass v. SouthTrust Bank ofBaldwin County, 538 So.2d 794, 797-98 (Ala. 1989).