[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10174
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 19, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-00631-CV-5-IPJ

REBECCA BOUTWELL,
an individual,

Plaintiff-Appellant,

versus

FEDERAL-MOGUL CORPORATION,
KELLY SERVICES, INC.,
corporations or similar business entities,
FEDERAL-MOGUL POWERTRAIN, INC.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 19, 2009)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Rebecca Boutwell brought claims for retaliatory discharge under Alabama Code § 12-16-8.1 against her former employers, Federal-Mogul Powertrain, Inc. ("Federal-Mogul") and Kelly Services, Inc. ("Kelly Services"), asserting that she was wrongfully discharged solely because she served on a jury. The district court, finding that Boutwell had not shown that Federal-Mogul's legitimate reason for the discharge – that she failed to call in to report her absences as required – was pretextual or that Kelly Services had terminated Boutwell's employment, granted summary judgment in favor of Federal-Mogul and Kelly Services. Boutwell appeals.

## I. FACTS

The relevant facts of this case, either undisputed or supported by the evidence considered in the light most favorable to Boutwell, are as follows. Boutwell was employed by Kelly Services, a temporary employment agency. Boutwell accepted a temporary placement through Kelly Services at Federal-Mogul. Boutwell worked the third-shift – 11:00 p.m. to 7:00 a.m., Sunday evening through Friday morning – under supervisor Jim Grange. Federal-Mogul would excuse its employees for jury duty, but had a mandatory call-in policy which required its employees to call their supervisor either on his cell phone or on

the Federal-Mogul main line for each day they would be absent.[1]  In November of 2007, Boutwell informed Grinage that she had been summoned to appear for jury duty on Monday, December 10, 2007.  Grinage excused Boutwell for the Sunday night shift before the day of the summons, but instructed her to call on Monday if she was picked to serve and to call every day she was required to serve.  On Monday, Boutwell was picked for a jury and was told that her service would be required for the entire week.  Boutwell called the Federal-Mogul main line on Monday and Tuesday and left messages informing Grinage of her need to be absent for the week due to jury service.[2]  Grinage testified that he did not receive Boutwell's messages and believed that Boutwell had violated the mandatory call-

---

[1] This is a disputed fact.  Both Grinage and Troy Butler, a human resources manager, testified that employees were required to call-in absences by calling the supervisor's cell phone, that employees were not supposed to call-in absences on the main line, and that Grinage could not receive messages left on the main line.  However, Donna Townsend, a personnel administrator for Federal-Mogul, testified that it was acceptable under Federal-Mogul's policies for an employee to call either the supervisor's cell phone or the main line to report absences.  Furthermore, Boutwell testified that the number for the main line was posted on a bulletin board in the employee break-room, with an instruction that "[c]all-ins must call this number."  Butler, in his deposition, admitted that this information was posted on the bulletin board and that he had done nothing to change the posting.  Accordingly, because we construe conflicting evidence in the light most favorable to Boutwell, we must assume for purposes of this motion that calling the Federal-Mogul main line was an accepted procedure for satisfying the mandatory call-in policy.

[2] This is also a disputed fact.  Boutwell testified that she left messages on this main line from her home phone on Monday and from her cell phone on Tuesday.  She also produced her home telephone records which indicate that she made three calls to the main line on Monday.  Butler, however, testified that he checked the messages on the main line and received no messages from Boutwell that week.  This evidence, viewed in the light most favorable to Boutwell, presents a genuine issue of material fact as to whether Boutwell satisfied the mandatory call-in policy.

3

in policy. On Thursday, December 13, 2007, Grinage told Troy Butler, Federal-Mogul's human resources manager, that Boutwell had not called in or attended work for three days. Butler testified that he checked the messages on the main line and did not hear a message from Boutwell. Accordingly, Butler informed Kelly Services that Federal-Mogul was terminating Boutwell's temporary employment due to her failure to comply with their mandatory call-in policy.

After her assignment at Federal-Mogul ended, Boutwell remained on Kelly Services's "available" list and could be considered for a new assignment. Boutwell told Kelly Services that, because of her child care needs, she would prefer a third-shift assignment. Kelly Services placed temporary employees at Yutaka in March of 2008, at Rock-Tenn in July of 2008, and at International Diesel in June or July of 2008. In July of 2008, Kelly Services contacted Boutwell regarding a position, but Boutwell was not interested because it was too far away and the hours were not acceptable. On August 11, 2008, Kelly Services notified Boutwell that a first-shift assignment was available at International Diesel. Boutwell accepted this assignment, but quit on her second day in order to care for her child who had become sick.

4

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment <u>de novo</u>.  <u>Thomas v. Cooper Lighting, Inc.</u>, 506 F.3d 1361, 1363 (11th Cir. 2007).  Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law.  <u>Id.</u>  "There is no genuine issue of material fact if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial."  <u>Jones v. Gerwens</u>, 874 F.2d 1534, 1538 (11th Cir. 1989).  "Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant."  <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742 (11th Cir. 1996).  We can affirm a grant of summary judgment on any basis supported by the record.  <u>Lucas v. W.W. Grainger, Inc.</u>, 257 F.3d 1249, 1256 (11th Cir. 2001).

## III.  ANALYSIS

Under Alabama law,[3] "an at-will employee is, with certain statutory exceptions, . . . subject to dismissal for any reason or for no reason" at all.  <u>Dykes</u>

---

[3] As a federal court sitting in diversity, we must apply Alabama law to the state-law claims in this case.  <u>Erie R. Co. v. Tompkins</u>, 304 U.S. 64 (1938) (noting that federal courts are constitutionally obligated to apply state law to state claims).

v. Lane Trucking, Inc., 652 So. 2d 248, 250 (Ala. 1994). One such statutory exception provides that "[n]o employer in this state may discharge any employee or subject any employee to an adverse employment action solely because he or she serves on any jury empanelled under any state or federal statute." Ala. Code § 12-16-8.1(a). "Any employee who is so discharged or subjected to an adverse employment action shall have a cause of action against the employer for the discharge or adverse employment action in any court of competent jurisdiction in this state . . . ." Ala. Code. § 12-16-8.1(b).

With the passage of Ala. Code § 12-16-8.1, the Alabama "[l]egislature intended to prohibit an employer from discharging an employee solely because the employee was absent from work because he or she was called for jury duty." Norfolk S. Ry. Co. v. Johnson, 740 So. 2d 392, 396 (Ala. 1999) (emphasis in original). In evaluating claims under Ala. Code § 12-16-8.1, Alabama courts employ a burden-shifting framework. Id. at 398. "An employee may establish a prima facie case of retaliatory discharge . . . by presenting substantial evidence suggesting that he was discharged 'solely' because he 'served' on a jury." Id. Alabama courts, interpreting an analogous state statute prohibiting the discharge

of an employee "solely" for filing a workers' compensation claim,[4] have recognized that "[b]ecause direct evidence demonstrating that an employer has discharged an employee solely because the employee has filed a workers' compensation claim is not often easily obtained, an employee [] may establish by circumstantial evidence that the actual reason for the discharge was the employee's filing of a workers' compensation claim." Hatch v. NTW Inc., – So. 3d –, 2009 WL 1716967 (Ala. Civ. App. June 19, 2009). Applying this principle to the case at hand, we conclude that an employee may also use circumstantial evidence to establish that the actual reason for the discharge was the employee's serving on a jury. In Alabama Power Company v. Aldridge, the Alabama Supreme Court identified six factors which a court may consider as circumstantial evidence of a causal relationship between the employee's protected activity and that employee's discharge:

> (1) knowledge of the [protected activity] by those making the decision on termination, (2) expression of a negative attitude toward the employee's [protected activity], (3) failure to adhere to established company policy, (4) discriminatory treatment in comparison to similarly situated employees, (5) sudden changes in an

---

[4] The Alabama Supreme Court, noting that Alabama's Workers' Compensation Act, Ala. Code § 25-5-11.1, and Ala. Code § 12-16-8.1 are retaliatory-discharge statutes with similar statutory language, refers to case law interpreting these statutes interchangeably. See e.g., Norfolk, 740 So. 2d at 396 (citing case law interpreting § 25-5-11.1 to interpret § 12-16-8.1) and Aldridge, 854 So. 2d at 566-67 (citing case law interpreting § 12-16-8.1 to interpret § 25-5-11.1).

employee's work performance evaluations following [the protected activity], and (6) evidence that the stated reason for the discharge was false.

854 So. 2d 554, 564-65 (Ala. 2002). In addition, the <u>Aldridge</u> court noted that "proximity in time between the [protected activity] and discharge" is a persuasive factor in establishing a causal connection. <u>Id.</u> at 565.

Once the employee establishes a <u>prima facie</u> case, "the burden shifts to the employer to come forward with evidence showing that the employee was terminated for a legitimate reason." <u>Norfolk</u>, 740 So. 2d at 396. "If the employer satisfies this burden, then the burden shifts back to the employee to show that the proffered reason is a pretext." <u>Id.</u> Pretext may be shown by presenting evidence indicating "(a) that the stated basis has been applied in a discriminatory manner to employees who have filed workers' compensation claims, (b) that the stated basis conflicts with express company policy on grounds for discharge, or (c) that the employer has disavowed the stated reason or has otherwise acknowledged its pretextual status." <u>Aldridge</u>, 854 So. 2d at 568.

### A. Federal-Mogul

After a full review of the record, we conclude that the district court erred in granting summary judgment on Boutwell's claim under Ala. Code § 12-16-8.1 against Federal-Mogul. As an initial matter, Boutwell established a <u>prima facie</u>

8

case by presenting evidence that she was employed by Federal-Mogul[5] and that she was terminated while absent on jury duty.[6] See Norfolk, 740 So. 2d at 398 (holding that employee established his prima facie case by showing that "he was removed just days after" he served on the jury). Federal-Mogul counters, as it always has, that it legitimately discharged Boutwell for failing to comply with its mandatory call-in policy. Specifically, Federal-Mogul asserts that the undisputed evidence shows that "Boutwell failed to call her supervisor's cell phone to notify him that she would be absent, and that Federal-Mogul had no knowledge that Boutwell had been selected for a jury and therefore would be absent." The burden, then, shifts back to Boutwell to demonstrate that this stated reason for the discharge is a pretext for retaliation.

-------

[5] On appeal, Federal-Mogul argues that Boutwell can not establish a prima facie case because Kelly Services, not Federal-Mogul, was Boutwell's employer. This argument has no merit. Under Alabama law, "a temporary services employee is the employee of both his or her general employer (i.e., the employment agency) and his or her special employer (i.e., the employer to which the employment agency assigned the employee to work)." Marlow v. Mid S. Tool Co.,Inc., 535 So. 2d 120, 123 (Ala. 1988).

[6] Federal-Mogul also argues on appeal that Boutwell does not establish a prima facie case because she presents no evidence that Grinage or Butler received Boutwell's messages or otherwise had actual knowledge that she was serving on a jury. We disagree. First, the fact that Federal-Mogul discharged Boutwell while she was on jury duty is sufficient circumstantial evidence to establish a prima facie case of retaliation. Norfolk, 740 So. 2d at 398. Moreover, assuming evidence of the employer's knowledge is required at the prima facie stage, Boutwell presented evidence showing that she followed a procedure authorized by Federal-Mogul to notify her supervisor of her jury service. This evidence is sufficient to raise the inference that Federal-Mogul had the requisite knowledge.

9

As discussed above, there is evidence in the record from which a reasonable fact finder could conclude that Federal-Mogul's employees were allowed to call either the main line or the supervisor's cell phone to report absences and that Boutwell called the main line and left voice messages on Monday and Tuesday to report that she would be absent all week. Accordingly, although Boutwell admittedly did not call her supervisor's cell phone, there is a genuine issue of fact as to whether she actually satisfied Federal-Mogul's mandatory call-in policy. Accordingly, Boutwell has presented evidence indicating that the stated reason for her discharge is false. Federal-Mogul asserts, however, that pretext can not be shown "merely by arguing that Federal-Mogul could (or even should) have known that Boutwell had been selected for a jury or that Federal-Mogul was wrong in believing that she had failed to call in." Rather, Federal-Mogul argues that Boutwell's claim fails as a matter of law because she has no direct evidence proving that either Grinage or Butler actually heard her voice messages on the main line or otherwise had actual knowledge that she satisfied the mandatory call-in policy. We disagree. First, one struggles to think of what evidence Boutwell <u>could</u> produce to prove that Grinage and/or Butler heard her messages. Butler testified that Federal-Mogul had no system for saving or documenting the messages left on the main line and that "the only evidence [one] would be able to

10

obtain about calls made to [the main line] would be" his testimony. Second, because Boutwell presented evidence showing that she followed a procedure authorized by Federal-Mogul to notify her supervisor of her need to be absent because of jury service, a reasonable fact finder could conclude that Federal-Mogul had actual knowledge that she was serving on a jury, even in the face of contrary evidence. See Gulf States Steel, Inc. v. Whisenant, 703 So. 2d 899, 907 (Ala. 1997) ("[K]nowledge need not be shown by direct proof. It may be made to appear, like any other fact, by showing circumstances from which the fact or actual knowledge is a legitimate inference."); Premdor Corp. v. Jones, 880 So. 2d 1148, 1149-55 (Ala. Civ. App. 2003) (noting that where employer's policy states that an employee must contact his supervisor upon sustaining a job-related injury, evidence that employee orally told supervisor is sufficient to establish employer's actual knowledge of the injury); see also Breda v. Wolf Camera & Video, 222 F.3d 886, 889 (11th Cir. 2000) (finding that an employer is deemed to have actual notice of the sexual harassment where "an employer has a policy for reporting harassment that is clear and published to its employees, and an employee follows that policy"). Given Boutwell's testimony that she left messages on the main line and Butler's testimony that there were no messages from Boutwell on the main line, a reasonable fact finder could conclude that Butler is credible and that

11

Federal-Mogul terminated Boutwell's employment because she failed to call in as required. However, a reasonable fact finder could also conclude that Boutwell is credible, that Butler did receive Boutwell's voice messages alerting Federal-Mogul that she was on jury duty, and that he chose to discharge her solely because she served on a jury. Because a genuine issue of material fact exists as to whether Federal-Mogul's stated reason for discharging Boutwell is a pretext, summary judgment is not appropriate on this claim. Accordingly, we remand this claim to the district court for proceedings consistent with this opinion.

**B.    Kelly Services**

The district court found that it was undisputed that Boutwell remained on Kelly Services' "available list" but that Kelly Services "had no other positions to fill from the time the plaintiff was terminated by Federal-Mogul until June or July of the following year." Accordingly, because Kelly Services did offer Boutwell a position in July of 2008, the district court found that Boutwell had not presented evidence that Kelly Services had discharged Boutwell, as required for establishing a prima facie case under Ala. Code § 12-16-8.1. On appeal, Boutwell argues that the statute protects her from any "adverse employment action," not just discharge, and that she did present evidence indicating that Kelly Services had positions to fill during the relevant time. Specifically, she points to the deposition testimony

12

of Lee Sandlin of Kelly Services, who testified that Kelly Services had placed first and second shift temporary employees at Yutaka as early as March of 2008. She asserts, therefore, that a genuine issue of fact exists as to whether Kelly Services had assignments available within the six months after her discharge from Federal-Mogul and whether the failure to offer one of these positions to her constituted an adverse employment action.

Alabama courts have not defined the term "adverse employment action" in the context of Ala. Code § 12-16-8.1. However, assuming that Kelly Services's failure to offer available positions to Boutwell can be considered an adverse employment action, we conclude that Boutwell has not presented evidence upon which a reasonable fact finder could conclude that Kelly Services subjected Boutwell to this adverse action "solely" because she served on a jury. Considering the evidence in the light most favorable to Boutwell, after December 13, 2007, Kelly Services did not have available positions in which to place its temporary employees until March of 2008. Boutwell presents no evidence indicating she was qualified for the positions which became available in March and no circumstantial evidence indicating that Kelly Services's failure to offer these positions to her was related to her jury service. Because three months passed between Boutwell's jury service in December and the alleged failure to offer her an available position in

13

March, the two events are not "proximate" and there is, therefore, no inference that the two events are connected. See Hatch, – So. 3d at –, 2009 WL 1716967 at *5. Furthermore, although the evidence indicates that Kelly Services was aware of Boutwell's service on a jury, this evidence alone is not sufficient to demonstrate that her service was the sole motivating factor in the decision to not offer one of the Yutaka positions to her. Id. at *6 (holding that the fact that employer had knowledge of the employee's protected activity was not sufficient to establish a prima facie case of retaliation where the timing of the discharge was not proximate to the protected activity). Evidence indicating that three months after Boutwell served on a jury, Kelly Services did not offer her a position which she may or may not have been qualified to fill is insufficient to satisfy Boutwell's initial burden of presenting "substantial evidence suggesting that [s]he was [suffered an adverse employment action] 'solely' because [s]he 'served' on a jury." Norfolk, 740 So. 2d at 396. Accordingly, we agree with the district court that Kelly Services is entitled to summary judgment in its favor because Boutwell has not satisfied her initial burden of presenting a prima facie case of retaliation.[7]

---

[7] Boutwell also asserts that because the position Kelly Services offered in August 2008 was a first-shift position, rather than a third-shift which she preferred, it was an "unvitation" to work. This allegedly adverse action was even more remote in time to Boutwell's jury service than was the failure to place her in the position available in March. Accordingly, for the reasons stated above, we conclude that this argument is insufficient to support a prima facie case.

14

## IV.  CONCLUSION

Upon review of the record and consideration of the parties' briefs, we conclude that the district court erred in granting summary judgment in favor of Federal-Mogul because a genuine issue of material fact exists as to whether Federal-Mogul's stated reason for the discharge – that Boutwell did not satisfy Federal-Mogul's mandatory call-in policy – was a pretext.  We also conclude that the district court properly granted summary judgment in favor of Kelly Services because Boutwell did not present evidence establishing a <u>prima facie</u> case under Ala. Code § 12-16-8.1.  Accordingly, we vacate and remand in part and affirm in part.

**VACATED AND REMANDED IN PART; AFFIRMED IN PART.**